IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| BRANDON E. WILLIS, | ) | |
| Plaintiff | ) | |
| v. | ) | No. 4:04-cv-110 |
| WESLEY PARKS, DENNIS YOUNG, and CITY OF WINCHESTER, TENNESSEE, | ) ) ) | |
| Defendants | ) | |

## MEMORANDUM OPINION

This is a civil rights action brought pursuant to 42 U.S.C. § 1983. Currently pending are the motion for summary judgment of defendants Dennis Young and the City of Winchester [Court File #25] and the motion to dismiss or in the alternative for summary judgment of defendant Wesley Parks [Court File #29]. Because matters outside the pleadings have been submitted and considered by the court, Parks' motion will be considered as one for summary judgment. *See* Rule 12(c), Federal Rules of Civil Procedure.

For the reasons that follow, summary judgment will be granted with respect to defendants Dennis Young and the City of Winchester, Tennessee, but denied with respect to defendant Wesley Parks.

I.

*Factual Background*

The following factual allegations are considered in the light most favorable to the plaintiff.

Plaintiff Brandon Willis claims that on December 12, 2003, he was operating a motor vehicle in which defendant Wesley Parks was a passenger. At the time, Parks was acting as an undercover officer for the Police Department of the City of Winchester. Defendant Dennis Young was the Chief of Police for the City. Officer Parks was investigating the plaintiff as a possible suspect for the sale of illegal narcotics.

Plaintiff contends that he became suspicious of Parks, stopped his vehicle, and asked Parks to exit the vehicle. He claims that suddenly and without warning Parks drew a handgun and shot the plaintiff, and at that time the plaintiff was unarmed and posed no threat to Officer Parks.

2

Plaintiff contends that Officer Parks was unqualified and inadequately trained to perform the duties of an officer for the Winchester Police Department. He claims that prior to being hired by the City of Winchester, Parks had a history of failing to conform his actions to the requirements of the law, including incidents of illegally selling guns. Plaintiff claims that the Police Department had a policy promulgated by Police Chief Young to hire and retain officers who were unqualified and inadequately trained to carry out the duties of a police officer.

With respect to the hiring and training of Officer Parks, defendants have submitted an undisputed affidavit of Police Chief Young. Chief Young describes the City policy regarding the use of force and training as follows. The City's written policy is that the City's officers are only to use the force reasonably necessary to effect lawful objectives and requires that officers receive training on the use of deadly force in situations of self-defense and to effect an arrest. All full-time officers are required to possess and maintain a valid state officer's certification from the Tennessee Police Officer Standards and Training Commission (POST) and complete 40 hours of in-service training annually as required by state law to maintain officer certification. This training includes 40 hours of instruction in firearms training. POST certification also requires training on the use of force continuum and a "shoot, don't shoot" class is included in the curriculum. Officer Parks was employed by the City of Winchester as an undercover officer in January 2003. Upon hiring, Officer

3

Parks was enrolled in the Tennessee Law Enforcement Training Academy in Donelson. He completed the Academy training in April 2003, and was certified by POST in April 2003. After receiving the POST certification, Officer Parks met all eligibility requirements and maintained his certification. Before becoming POST-certified, Officer Parks worked with Herb Glassmeyer, a police officer for 40 years, including 30 years experience in undercover work. At the time of the shooting of the plaintiff, Officer Parks wore a recording device for each drug purchase. After each purchase made before Parks became POST-certified, he met with the Chief and Glassmeyer so that they could provide instruction to him. During those meetings, Parks was instructed on responding to suspects with appropriate levels of force. The City of Winchester also provided Parks with eight hours of firearms training before he was POST-certified, and that training included instruction on the appropriate use of deadly force.

Before Parks was hired, a criminal background check was performed on him which showed that he had not been convicted of any crime. When he made the decision to hire Officer Parks, Chief Young was not aware of any incident in which Parks had participated in the illegal sale of weapons, although he knew that Parks had sold or traded guns in the past, apparently legally.

It is undisputed that Officer Parks was not accused of using unreasonable force with any citizen other than Brandon Willis during the time that he was employed by the City of Winchester. Chief Young was not present when Brandon Willis was shot by Officer Parks, nor did he communicate with Officer Parks about the use of a weapon against Brandon Willis before Willis was shot.

II.

*Summary Judgment Standards*

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion. However, an opponent to a motion for summary judgment may not rest

upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of proof at trial. *Catrett*, 477 U.S. at 322.

III.

*** Plaintiff's Constitutional Claims***

In the complaint, Willis claims that the defendants violated his Fourth, Sixth, and Fourteenth Amendment rights. The United States Supreme Court has held that all claims of excessive force in arrests, investigatory stops, or other seizures are to be analyzed under the reasonableness standard of the Fourth Amendment and not under the substantive due process standard of the Fourteenth Amendment. *Graham v. Connor*, 490 U.S. 386 (1989). In addition, the rights guaranteed by the Sixth Amendment apply specifically to the conduct of a criminal

prosecution and not to a police officer's actions incident to an arrest. Accordingly, plaintiff's claims under the Sixth and Fourteenth Amendments must be dismissed.

IV.

*Municipal Liability*

To recover against a municipality, a §1983 claimant must show that the enforcement of a municipal policy or custom was the direct causal link or moving force behind a violation of the claimant's federally protected rights. *Polk County v. Dodson*, 454 U.S. 312, 326 (1981). To satisfy the requirements for establishing municipal liability, a plaintiff must identify the policy or custom, connect the policy or custom to the City itself, and show that the particular injury was incurred because of the execution of that policy or custom. *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993).

Municipal policy is that policy adopted by municipal officers with final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). A municipal custom, on the other hand, "is a legal institution that is permanent and established, but is not authorized by written law." *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993). Before a custom can be the basis of a civil rights

violation, the custom must be so permanent and well-settled as to constitute a custom or usage with the force of law. *Id.*

Even if a plaintiff cannot show the existence of a municipal policy or pattern of unconstitutional conduct, a §1983 municipal claim may be maintained if there is "evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such violation." *Bd. of Commissioners v. Brown*, 520 U.S. 397, 409 (1997). Application of this theory of liability is limited to those cases "where the failure to train amounts to deliberate indifference to the rights of persons with whom the officers come in contact." *City of Canton v. Harris*, 489 U.S. 378, 387-91 (1989).

With respect to plaintiff's claim that the City had a policy of hiring and retaining inadequately trained individuals, plaintiff has simply come forward with no evidence of any such custom or policy. Rather, the written policy requires the City's officers to receive training on the use of deadly force in self-defense and to effect an arrest and requires that the officers possess and maintain valid state police officer certification and that they fulfill 40 hours per year of in-service training. Officer Parks had all of these qualifications and this training. In order to make a finding that the City had a policy or custom of hiring and retaining inadequately trained officers, this

8

court would have to find that the State of Tennessee's training requirements for its police officer certification were inadequate. There is simply no evidence of that. Nor does the suggestion that Parks at some point apparently legally "traded" guns suggest that Parks was likely to use excessive force in effecting an arrest. Accordingly, the defendant City of Winchester is entitled to summary judgment.

## IV.
### *Supervisory Liability*

Under §1983, a defendant may not be sued on a *respondeat superior* theory of liability. *Monell v. Dept. of Social Services*, 436 U.S. 658, 691-95 (1978). Nor may a superior officer be liable under §1983 simply because he has authority to control subordinate employees. *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976). There must be a direct causal link between the acts of an individual officer and the supervisory defendant in order for such liability to attach. *Id.* With respect to a supervisory officer's liability for the actions of an arresting officer, the United States Court of Appeals for the Sixth Circuit has summarized that liability as follow:

> Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some way directly participated in it. At a minimum a plaintiff must show that the official at least

9

> implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

In this case, Chief Young was not present when Willis was shot and did not participate in the incident. There is simply no evidence that, although Young had apparently warned Parks that Willis had been involved in a prior drug sale in which Willis had a weapon, he at least implicitly "authorized, approved, or knowingly acquiesced" in the shooting of Willis. Accordingly, Chief Young is also entitled to summary judgment.

V.

***Individual Capacity Suits***

Defendant Parks contends that he is entitled to dismissal of plaintiff's claim against him because plaintiff failed to properly assert a claim against him in his individual capacity. Since a suit against an individual in his official capacity is the equivalent of a suit against the government entity, *see Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994), and the City of Winchester is entitled to summary judgment as indicated above, if Parks is correct in this argument, then the claim against him must also be dismissed.

In *Wells v. Brown*, 891 F.2d 591 (6th Cir. 1989), the United States Court of Appeals for the Sixth Circuit held that under §1983 even *pro se* inmates were required to clearly set forth in their pleadings that they were suing state defendants in their individual capacities for damages, not simply in their capacities as state officials. The court noted that "[i]t is not too much to ask that if a person or entity is to be subject to suit, the person or entity should be properly named and clearly notified of the potential payment of damages individually." *Id.* at 593.

The court has carefully reviewed the complaint and finds that, although the language used could be more precise, it sufficiently notifies Officer Parks that he is being sued in his individual capacity. First, in the style of the complaint, Parks is simply identified as "WESLEY PARKS". There is no indication in the style that he is being sued "in his capacity as a police officer for the City of Winchester." Paragraph 15 of the complaint reads as follows:

> 15. The conduct of the Defendants, and each of them, deprived the Plaintiff of his rights under the Fourth, Sixth and Fourteenth Amendments of the Constitution of the United States of America, in violation of 42 U.S.C. §1983, and their actions violated the constitutional standards governing a citizen's claim that law enforcement officers not use excessive force in the course of making a stop and in effect a seizure of the person. The actions of the Defendants, and each of them, were objectively unreasonable. Based on the information that a reasonable officer would or should have observed, it was unreasonable

11

for the Defendants to act in the manner in which these Defendants acted.

Defendant Parks relies on Paragraph 8 of the complaint as an indication that plaintiff only notified him of his intent to sue him in his official capacity. That paragraph reads as follows:

> 8. Each and all of the acts of the Defendants that are alleged to have been done by the Defendants, and each of them, were done not as individuals, but under the color and pretense of the statutes, ordinances, regulations, customs, policies, and usages of the State of Tennessee, City of Winchester, and under the authority of their office as police officers for the City of Winchester, Tennessee. The actions of the individual Defendants as alleged implemented or executed a policy statement, regulation or decision adopted and promulgated by the Defendant, City of Winchester, Tennessee.

This paragraph is somewhat ambiguous. The purpose of it appears to be an attempt to hold the City liable for Mr. Parks' actions. However, reading the complaint as a whole, the court concludes that plaintiff sufficiently stated a claim against Officer Parks in both his individual and official capacities.

VI.

*Qualified Immunity*

Officer Parks claims that even if plaintiff states a claim against him in his individual capacity, he is entitled to qualified immunity.

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The Supreme Court of the United States has held that a two-tiered analysis is necessary to determine when an officer is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194 (2001). First, a court should inquire as to whether a constitutional right would have been violated based on the alleged facts. *Id.* Second, assuming that a violation is established, a court should determine whether the right was "clearly established." *Id.* The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in light of the situation he confronted. *Id.* at 202. The burden of proving that a right was clearly established at the time of the complaint falls on the plaintiff. *Dominique v. Telb*, 831 F.2d 673, 676 (6th Cir. 1987). In short, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The right to be free from excessive force during a police seizure is well settled. *Graham*, 490 U.S. at 395. There is no "hazy border between excessive and acceptable force." *See Saucier*, 533 U.S. at 205-06. The Supreme Court has

13

outlined the principles for evaluating whether the use of deadly force is reasonable under the Fourth Amendment:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985).

Plaintiff has submitted his own affidavit in this case in which he claims that prior to the shooting Officer Parks never identified himself as a law enforcement officer; that he never reached under the seat of his car or made any movement which could have been construed by Parks as attempting to reach under the seat for the purpose of obtaining a weapon prior to Parks shooting him; that Parks never told him "don't do that" prior to shooting him; that prior to Parks shooting him he never told Parks that he was armed or gave Parks any reason to believe that he was armed; that there were no weapons in his car at the time of the shooting on December 12, 2003; and that at the time he was shot by Parks he was not attempting to flee nor was he resisting arrest.

14

Plaintiff and Parks were the only two individuals present at the time of the shooting. Thus, if a jury were to believe plaintiff's version of the events that occurred, then Parks simply shot the plaintiff without justification. In this case, if plaintiff's version of the events as they occurred is true, then Officer Parks' conduct would violate clear constitutional rights of which a reasonable person would have known. Accordingly, defendant Parks is not entitled to summary judgment on the basis of qualified immunity.

VII.

*Conclusion*

In light of the foregoing, the motion for summary judgment of defendants City of Winchester and Dennis Young [Court File #25] will be granted, and defendant Wesley Parks' motion for summary judgment [Court File #29] will be denied.

Order accordingly.

                              *s/ James H. Jarvis*
                          UNITED STATES DISTRICT JUDGE